# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

RICKY SCOTT,

    Plaintiff,

v.

HENRY FORD HEALTH SYSTEM, HENRY FORD ALLEGIANCE HEALTH, an assumed name for W.A. FOOTE MEMORIAL HOSPITAL, AZAM BASHEER, M.D., BRIAN J. DUFFY, PA, DIRK PETERS, PA, JILL A. CONNOLLY, RN, KRYSTLE KEEHN, RN, SAMANTHA E. LYONS, RN, WENDY L. MACKEY, RN, DEBRA A. PRIEST, RN, LAURA L. THIEBAUT, RN, ASHLEY A. WALKER, RN, GABRIELLE M. GIBSON, OT, DAWN R. WHEATON, OT, NAMITA DAMARAJU, PT, MAUREEN SCIOLTO, PT, JANICE S. WOHLGEMUTH, PT, ANDREA L. WOODRING, PT, SALLY R. BURBANK, PTA, KAMA R. CLARK, PTA, ASHLEY CLARK-HORSTMAN, MA, CCC-SLP,

    Jointly and Severally,

    Defendants.

Case No. 22 -
Hon.

_____/

GEOFFREY N. FIEGER (P30441)
TODD J. WEGLARZ (P48035)
Attorney for Plaintiff
19390 W. 10 Mile Road
Southfield, MI  48075
(248) 355-5555
(248) 355-5148 (fax)
t.weglarz@fiegerlaw.com
_____/

{01239743.DOCX}  1

## COMPLAINT AND JURY DEMAND

Other civil actions arising out of and/or relating to the same transaction or occurrence as alleged in this complaint have previously been filed: *Scott v Henry Ford Health System, et al,* Case No. 21-2808-NH (Jackson County Cir. Ct., Judge LaFlamme), and *Ricky Scott v Corizon, et al,* Case No. 21-2889-NH (Jackson County Cir. Ct., Judge LaFlamme). Both actions remain pending.

*/s/ Todd J. Weglarz*
Todd J. Weglarz (P48035)

NOW COMES Plaintiff, RICKY SCOTT, by and through his attorneys, Fieger, Fieger, Kenney & Harrington, P.C., and for his Complaint against Defendants, states as follows:

## JURISDICTION AND VENUE

1. That this Court has jurisdiction of this action under the provisions of Title 28 of the United States Code, Sections 1331 and 1343.

2. That Plaintiff brings this suit against Defendants in their individual capacities.

3. That each and every act of Defendants, as set forth herein, was done under the color and pretense of the statutes, ordinances, regulations, laws, customs, and usages of the State of Michigan, and by virtue of, and under the authority of, the individual Defendant's employment and/or contractual relationship with the State of Michigan.

4. That the amount in controversy exceeds Seventy-Five Thousand ($75,000.00) Dollars, exclusive of costs, interest, and attorney fees.

## GENERAL ALLEGATIONS

5. Plaintiff hereby restates and re-alleges paragraphs one through four (4) of this Complaint as if fully stated herein.

6. At all times relevant, Plaintiff RICKY SCOTT is a resident of Grand Rapids, Michigan, and is / was entitled to all the rights, privileges, and immunities accorded to all U.S. citizens and residents of Grand Rapids and the State of Michigan.

6. At all times relevant, and upon information and belief, HENRY FORD HEALTH SYSTEM, HENRY FORD ALLEGIANCE HEALTH, an assumed name for W.A. FOOTE MEMORIAL HOSPITAL (DMC), AZAM BASHEER, M.D., BRIAN J. DUFFY, PA, DIRK PETERS, PA, JILL A. CONNOLLY, RN, KRYSTLE KEEHN, RN, SAMANTHA E. LYONS, RN, WENDY L. MACKEY, RN, DEBRA A. PRIEST, RN, LAURA L. THIEBAUT, RN, ASHLEY A. WALKER, RN, GABRIELLE M. GIBSON, OT, DAWN R. WHEATON, OT, NAMITA DAMARAJU, PT, MAUREEN SCIOLTO, PT, JANICE S. WOHLGEMUTH, PT, ANDREA L. WOODRING, PT, SALLY R. BURBANK, PTA, KAMA R. CLARK, PTA, and/or ASHLEY CLARK-HORSTMAN, MA, CCC-SLP, were assigned to and were responsible for Plaintiff Ricky Scott, an MDOC inmate, as well as Mr. Scott's medical care, during his admission at Henry Ford Allegiance Hospital, from February 12, 2019, through

February 20, 2019, pursuant to contract with the State of Michigan and/or Michigan Department of Corrections.

7. At all times relevant, Defendant AZAM BASHEER, M.D. (hereinafter "BASHEER"), was a licensed physician, acting under the color of law while acting as a Neurological Surgeon at the Henry Ford Allegiance Hospital in Jackson, Michigan, County of Jackson, State of Michigan.

8. At all times relevant, Defendant BRIAN J. DUFFY, PA (hereinafter "DUFFY"), was a licensed physician's assistant, acting under the color of law while holding himself out acting as a physician's assistant at the Henry Ford Allegiance Hospital in Jackson, Michigan, County of Jackson, State of Michigan.

9. At all times relevant, Defendant DIRK PETERS, PA (hereinafter "PETERS"), was a licensed physician's assistant, acting under the color of law while holding himself out as a physician's assistant at the Henry Ford Allegiance Hospital in Jackson, Michigan, County of Jackson, State of Michigan.

10. At all times relevant, Defendant JILL A. CONNOLLY, RN (hereinafter "CONNOLLY"), was a licensed registered nurse, acting under the color of law while holding herself out as a nurse at the Henry Ford Allegiance Hospital in Jackson, Michigan, County of Jackson, State of Michigan.

11. At all times relevant, Defendant KRYSTLE KEEHN, RN (hereinafter "KEEHN"), was a licensed registered nurse, acting under the color of law while

holding herself out as a nurse at the Henry Ford Allegiance Hospital in Jackson, Michigan, County of Jackson, State of Michigan.

12. At all times relevant, Defendant SAMANTHA E. LYONS, RN (hereinafter "LYONS"), was a licensed registered nurse, acting under the color of law while holding herself out as a nurse at the Henry Ford Allegiance Hospital in Jackson, Michigan, County of Jackson, State of Michigan.

13. At all times relevant, Defendant WENDY L. MACKEY, RN (hereinafter "MACKEY"), was a licensed registered nurse, acting under the color of law while holding herself out as a nurse at the Henry Ford Allegiance Hospital in Jackson, Michigan, County of Jackson, State of Michigan.

14. At all times relevant, Defendant DEBRA A. PRIEST, RN (hereinafter "PRIEST"), was a licensed registered nurse, acting under the color of law while holding herself out as a nurse at the Henry Ford Allegiance Hospital in Jackson, Michigan, County of Jackson, State of Michigan.

15. At all times relevant, Defendant LAURA L. THIEBAUT, RN (hereinafter "THIEBAUT"), was a licensed registered nurse, acting under the color of law while holding herself out as a nurse at the Henry Ford Allegiance Hospital in Jackson, Michigan, County of Jackson, State of Michigan.

16. At all times relevant, Defendant ASHLEY A. WALKER, RN (hereinafter "WALKER"), was a licensed registered nurse, acting under the color

of law while holding herself out as a nurse at the Henry Ford Allegiance Hospital in Jackson, Michigan, County of Jackson, State of Michigan.

17. At all times relevant, Defendant GABRIELLE M. GIBSON, OT (hereinafter "GIBSON"), was a licensed occupational therapist, and acting under the color of law while holding herself out as an occupational therapist at the Henry Ford Allegiance Hospital in Jackson, Michigan, County of Jackson, State of Michigan.

18. At all times relevant, Defendant DAWN R. WHEATON, OT (hereinafter "WHEATON"), was a licensed occupational therapist, and acting under the color of law while holding herself out as an occupational therapist at the Henry Ford Allegiance Hospital in Jackson, Michigan, County of Jackson, State of Michigan.

19. At all times relevant, Defendant NAMITA DAMARAJU, PT (hereinafter "DAMARAJU"), was a licensed physical therapist, and acting under the color of law while holding herself out as a physical therapist at the Henry Ford Allegiance Hospital in Jackson, Michigan, County of Jackson, State of Michigan.

20. At all times relevant, Defendant MAUREEN SCIOLTO, PT (hereinafter "SCIOLTO"), was a licensed physical therapist, and acting under the color of law while holding herself out as a physical therapist at the Henry Ford Allegiance Hospital in Jackson, Michigan, County of Jackson, State of Michigan.

21. At all times relevant, Defendant JANICE S. WOHLGEMUTH, PT (hereinafter "WOHLGEMUTH"), was a licensed physical therapist, and acting under the color of law while holding herself out as a physical therapist at the Henry Ford Allegiance Hospital in Jackson, Michigan, County of Jackson, State of Michigan.

22. At all times relevant, Defendant ANDREA L. WOODRING, PT (hereinafter "WOODRING"), was a licensed physical therapist, and acting under the color of law while holding herself out as a physical therapist at the Henry Ford Allegiance Hospital in Jackson, Michigan, County of Jackson, State of Michigan.

23. At all times relevant, Defendant SALLY R. BURBANK, PTA (hereinafter "BURBANK"), was a licensed physical therapist assistant, and acting under the color of law while holding herself out as a physical therapist at the Henry Ford Allegiance Hospital in Jackson, Michigan, County of Jackson, State of Michigan.

24. At all times relevant, Defendant KAMA R. CLARK, PTA (hereinafter "CLARK"), was a licensed physical therapist assistant, and acting under the color of law while holding herself out as a physical therapist at the Henry Ford Allegiance Hospital in Jackson, Michigan, County of Jackson, State of Michigan.

25. At all times relevant, Defendant ASHLEY CLARK-HORSTMAN, MA, CCC-SLP (hereinafter "CLARK-HORSTMAN"), was a licensed speech

pathologist, and acting under the color of law while holding herself out as a speech pathologist at the Henry Ford Allegiance Hospital (HFA) in Jackson, Michigan, County of Jackson, State of Michigan.

## FACTUAL ALLEGATIONS

26. Plaintiff hereby restates and re-alleges each and every allegation contained in paragraphs one through twenty-five (25) as though fully set forth herein.

27. Prior to February 12, 2019, Plaintiff was able to ambulate independently and and perform his own activities of daily living.

28. On January 24, 2019, while an MDOC inmate, Plaintiff presented to HFA where he was evaluated by Defendant BASHEER for complaints of increased right-sided weakness over the last couple of weeks, numbness and tingling in both arms, and neck pain, and was fully continent of bladder and bowel.

29. MRI performed on January 24, 2019, revealed degenerative disc disease at C3-C4, with central canal stenosis and foraminal encroachment from C7 through T2.

30. On January 28, 2019, Plaintiff's upper and lower extremity strength was documented as follows:

> Shoulder strength:  R: 5/5; L 4/5.
> Deltoid strength:  R +3/5; L 4/5
> Biceps strength:  R 4/5; L 4+5
> Triceps strength:  R 3/5; L 4/5
> Grasp strength:  R 3/5; L 3/5
> HF (hip flexor) strength:  R 5/5; L 5/5
> KE (knee Flexor) strength:  R 5/5; L 5/5

{01239743.DOCX}   8

        DF (dorsi flexor) strength:  R 5/5; L 5/5
        PF (plantar flexor) strength: R 4+/5; L 5/5
        EHL (Extensor Hallucis Longus) strength:  R 4/5; L 5/5

31. Defendant BASHEER recommended Plaintiff undergo decompression and fusion of the cervical spine.

32. On February 12, 2019, Defendant BASHEER performed the following surgical procedure on Plaintiff: 1) left-sided approach for C4 and C5 corpectomy; 2) bilateral C3-C4, C4-C5, C5-C6 foraminotomies; 3) insertion of interbody corpectomy cage/device at C4 and C5; 4) anterior cervical stabilization and arthrodesis, from C3 to C6; 4) anterior cervical stabilization and arthrodesis, from C3 to C6; 5) bone marrow aspirate from the cervical vertebral body; 6) morcelized allograft; 7) microscope; and 8) interoperative monitoring using spinal cord and EMG monitoring.

33. Defendant BASHEER noted that Plaintiff's procedure was more technically demanding, of increased physician work intensity, and of longer duration than normal because of:

    a. The patient had very severe spinal stenosis, and neuromonitoring was very labile;

    b. There were frequent pauses and discussions with the neuro monitoring team.

    c. There was loss of some of the neuro- monitoring activity.

34. Subsequent to the above corpectomies, Defendant BASHEER proceeded to carry out the following procedures: 1) application of Mayfield tong; 2) bilateral C2 (partial), C3, C4, C5, C6 decompression laminectomy; 3) Bilateral C2-3, Cc-4, C4-5, C5-6 foraminal decompression with partial facetectomy for adequate decompression; 4) bilateral posterior segmental fixation, C2 to C6; 5) posterolateral arthrodesis C2-3, C3-4, C4-5, and C5-6 using

morselized local bone and morselized allograft; 6) fluoroscopy; and 7) intraoperative monitoring using SSEP and EMG monitoring.

35. After performing the above, Defendant BASHEER closed the surgical sites and Mr. Scott was transferred to recovery /PACU that same day.

36. Shortly after Plaintiff's surgery, Defendants BASHEER, DUFFY, and/or PETERS requested that Plaintiff be evaluated by the PT and OT services.

37. Throughout Mr. Scott's admission at HFA, he was monitored by HFA's Neurosurgery / Neurological Surgery Service, which included Defendants BASHEER, DUFFY, PETERS, CONNOLLY, KEEHN, LYONS, MACKEY, PRIEST, THIEBAULT, and WALKER.

38. On Post-Op Day #1 (02-13-19), at approximately 4:30 am and while in the Neuro ICU, Defendant CONNOLLY noted that Plaintiff was unable to walk and was reporting bilateral lower extremity weakness and stiffness, who was unable to get up to the side of the bed without a three person assist. and was noted to have loss of bladder function. CONNOLLY saw Plaintiff again at 8:35 am.

39. On 02-13-19 at 9:12 am, Defendant GIBSON noted Plaintiff had a swollen right hand, was "extremely limited in all four extremities", and was covered in urine. Plaintiff explained he was unable to control or feel himself urinating. Thereafter, Plaintiff unknowingly urinated on himself again, this time in the presence of Defendant GIBSON, who noted Plaintiff could not even feel that his gown was wet, and that Plaintiff was far from his baseline independence.

40. Defendant GIBSON also noted Plaintiff was impaired in both upper and lower extremities and required maximum assistance with all movements. Her note states she notified the RN and Neurosurgery team of Plaintiff's loss of bladder functioning.

41. On 02-13-19, at 9:31 am, Plaintiff was evaluated by Defendant WOODRING, who noted Plaintiff had limited movements in his arms and legs, was "extremely impaired", incontinent, and that these were new symptoms.

42. On 02-13-19, at 10:44 am, Plaintiff was evaluated by Defendant PEETERS and/or BASHEER, who noted patient was "doing well" but complains of BLE weakness.

43. On Post-OP Day #3 (02-14-19), Mr. Scott was noted to have "severe" upper right extremity weakness, lower extremity weakness, to be "severely limited" in all four extremities, unable to sit or stand, and to have "burning" pain in the neck, both shoulders, and when swallowing. Plaintiff was seen by Defendants BASHEER, PEETERS, BURBANK, DAMARAJU, and/or GIBSON on this date and were aware of the above referenced condition and complaints.

44. On Post-Op Day #5 (02-15-19), Defendant PEETERS and/or BASHEER noted that Plaintiff had developed dysphagia and requested a speech pathology consult. In response, Defendant CLARK-HORSTMAN evaluated Mr Scott and discovered he was barely able to swallow. Defendant CLARK-HORSTMAN also noted this dysphagia has been ongoing since his surgery.

45. By Post-OP Day #5 (02-16-19), Mr. Scott had continued bilateral upper extremity weakness, and Defendants noted Plaintiff has not been able to move his right arm since the surgery and could not feel below his chest. Motor Exam revealed strength of 1-2 for the right upper and lower extremities, and sensory exam revealed diminished sensation to light touch distal to costal margin.

46. CT Scan of Cervical Spin performed on 02-16-19 revealed extensive prevertebral soft tissue swelling, narrowing of the hypopharyngeal airway.

47. Defendants DUFFY, BASHEER, LYONS, and/or THIEBAUT, on 02-16-19, and were aware of the above referenced condition and complaints.

48. On Post-Op Day #6 (02-17-19), Mr. Scott had further decreased strength of extremities and continued sensation loss.

49. By Post-OP Day #8 (02-19-19), Mr. Scott was observed crying in disgust and frustration. He had no sensation whatsoever in his lower extremities, and had burning pain in both shoulders, with pronounced swelling in the upper extremities. Mr. Scott was unable to walk or even stand on his own. Plaintiff was seen by Defendants BASHEER, DUFFY, PEETERS, KEEHN. HECKAMAN, SCIOLTO, THIEBAUT, WALKER, and/or WOODRING over the past few days, all of whom were aware of the above conditions and complaints.

50. On Post-Op Day #9 (02-20-19), Mr. Scott's continued upper extremity weakness was noted, as was his loss of sensation and strength in both lower extremities. He was noted to be bed bound, with severe impairment with motor skills / coordination and muscle tone, who required total physical assistance. Plaintiff was seen by Defendants PRIEST, WHEATON, CLARK, and CLARK-HORSTMAN on this date, all of whom were aware of the above condition and complaints.

51. Notwithstanding the above, Defendant BASHEER discharged Mr. Scott from HFAH to the Duane Waters Hospital on 02-20-19.

52. Upon arrival at Duane Waters Hospital on 02-20-19, Mr. Scott was noted to be quadriplegic and having constant neck and back spasms, with multiple contractures, requiring three types of muscle relaxants, with inability to voice when he is in pain.

53. Mr. Scott languished in the Duane Waters Hospital for a week, until he was finally transferred back to HFAH on February 28, 2019, for follow up by the Neurosurgery Service.

54. Upon arrival at HFAH on 02-28-19, Mr. Scott was noted to have 0/5 strength to the bilateral upper and lower extremities.

55. CT imaging of the Cervical Spine performed on 02-28-19 depicted a large fluid collection along the anterior aspect of C3-C7. With significant mass effect and displacement of the larynx anteriorly.

56. Mr. Scott underwent incision and drainage and evacuation of his large hematoma on March 1, 2019, during which old hematoma squirted out as soon as the fascia was opened, indicating the hematoma was clearly under pressure.

57. Mr. Scott has been a quadriplegic ever since (with some regain in function of his arms).

58. As a result of the above and below described actions, Plaintiff suffered numerous injuries and damages, including, but not limited to, the following:

    a.    Spinal epidural hematoma;

    b.    Retropharyngeal - prevertebral fluid collection along anterior aspect of C3-C7;
    c.    Permanent quadriplegia and need for 24/7 care;
    d.    Wound infections;
    e.    Wound dehiscence;
    f.    Dysphasia;
    g.    Depression;
    h.    Conscious pain and suffering;
    i.    Past, present, and future medical expenses;
    j.    Wage loss and/or loss of earning capacity;
    k.    Attorney fees and costs pursuant to 42 USC § 1988;
    l.    Any and all other damages otherwise recoverable under federal law and Michigan law.

## COUNT I

## DELIBERATE INDIFFERENCE

## VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 USC § 1983 (ALL DEFENDANTS)

59. Plaintiff hereby restates and re-alleges each and every allegation contained in paragraphs one through fifty-eight (58) as if fully set forth herein.

60. That the acts or omissions by Defendants were unreasonable and performed knowingly, deliberately, indifferently, intentionally, maliciously, and with gross negligence, callousness, and deliberate indifference to Plaintiff's well-being and serious medical needs.

61. That the conduct of Defendants, by failing to provide any care or treatment to Plaintiff after it was known he was exhibiting multiple signs, symptoms, and complaints of an obvious spinal cord compression injury (paralysis / quadriplegia) amounted to a deliberate indifference to Plaintiff's serious medical needs and deprived Plaintiff of his clearly established rights, privileges, and immunities guaranteed him under the United States Constitution, specifically those set forth under the 8th and 14th Amendments.

62. That the above described conduct of Individual Defendants also caused Plaintiff the injuries and damages as set forth and enumerated above.

63. That the policies and procedures developed and maintained by corporate Defendants caused the constitutional deprivations described above.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in her favor and against Defendants, jointly and severally, and award an amount in excess of Seventy Five Thousand ($75,000.00) Dollars exclusive of costs, interest, attorney fees, as well as punitive and exemplary damages.

### PLAINTIFF DEMANDS A TRIAL BY JURY

Respectfully submitted by:

Dated:   February 14, 2022

/s/Todd J. Weglarz
GEOFFREY N. FIEGER (P30441)
TODD J. WEGLARZ (P48035)
Attorneys for Plaintiff
19390 W. 10 Mile Road
Southfield, MI  48075
(248) 355-5555
(248) 355-5148 (fax)
t.weglarz@fiegerlaw.com